IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ADEDAYO OLUWAKAYODE ADEKSON, | * |
| Plaintiff, | * |
| v. | * |
|  | *   Civil No. 25-1660-BAH |
| COMCAST CABLE COMMUNICATIONS, LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Adedayo Oluwakayode Adekson ("Plaintiff") brought suit against Comcast Cable Communications, LLC ("Comcast") in the Circuit Court for Baltimore City for claims arising out of allegedly deficient internet speed. *See* ECF 4 (amended state court complaint). On May 23, 2025, Comcast removed the action to this Court. *See* ECF 1. Pending before the Court is Comcast's motion to compel arbitration (the "Motion"). ECF 15. Plaintiff filed an opposition and a supplement thereto, ECF 16 (opposition); ECF 23 (supplement), and Comcast filed a reply, ECF 22. All filings include memoranda of law, and the Motion and Plaintiff's opposition include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Comcast's Motion is **GRANTED** in part and **DENIED** in part.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

I. **BACKGROUND**

Plaintiff alleges that he and his mother, Mary Adekson, moved into a shared residence in June of 2024 and "obtained Internet service with Xfinity . . . shortly thereafter." ECF 9, at 1 ¶ 1. According to Comcast, "Plaintiff and his mother . . . signed up for Comcast's high speed internet . . . via the Comcast website, opening an account under the name Mary Adekson." ECF 15-2 (Padgett declaration), at 2 ¶ 5. "At the time of purchase of services, affirmative consent to the Comcast Subscriber Agreement was given for the Adekson account," and the subscriber agreement "includes an Arbitration Provision." *Id.* at 2 ¶ 6, at 4 ¶ 9. The first page of the subscriber agreement alerts readers of the existence of an arbitration provision in capitalized, bold font:

> **Note: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICES. UNLESS YOU HAVE OPTED OUT IN A TIMELY MANNER, THE ARBITRATION PROVISION REQUIRES THAT ALL DISPUTES BE RESOLVED IN INDIVIDUAL ARBITRATIONS OR SMALL CLAIMS COURT PROCEEDINGS. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

ECF 15-4 (Comcast subscriber agreement), at 2.

The arbitration provision of the subscriber agreement then provides that: "Any Dispute involving you and us shall be resolved through individual arbitration as described in this Section 13 (the 'Arbitration Provision')." *Id.* at 6. It further defines a "dispute" as:

> any and all claims or controversies arising out of or related to any aspect of our relationship, including, but not limited to, any and all: (i) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (ii) claims or controversies that arose before this Agreement or any prior agreement; (iii) claims or controversies that arise after the expiration or termination of this Agreement; and (iv) claims or controversies that are the subject of purported class, collective, or representative action litigation.

*Id.*

In general, to obtain services, Comcast requires customers to "check[] the box and click[] the 'I agree' button affirming consent to the Subscriber Agreement." ECF 15-2, at 4 ¶ 8 (emphasis omitted). With respect to Plaintiff's residence, "by checking a box and clicking on 'I agree,' Plaintiff agreed to the terms of the Subscriber Agreement, which was immediately accessible through a purple hyperlink." *Id.* at 2–3 ¶ 6 (emphasis omitted). Plaintiff also has "manager level access," meaning he "has access to the services, settings, billings, troubleshooting, and contact information" on the account. *Id.* at 4 ¶ 10; ECF 15-5 (Comcast's record of Plaintiff's mother's account), at 2.

Plaintiff alleges that after obtaining internet service from Comcast, he and his mother experienced "inexplicable [internet] speed degradation; despite paying for a service that should provide circa 300mbps, [their] speed would sometimes hover around 0kbps and [they] would not be able to use the Internet at all." ECF 9, at 2 ¶ 5. The internet speed issues led to "buffering, sputtering and stopping" which caused "video calls that [Plaintiff] . . . made for employment purposes" to drop, which Plaintiff claims cost him lucrative employment opportunities. *Id.* at 3–4 ¶¶ 6–7. Plaintiff also alleges that the slow speed interfered with his "usage of the Internet for mundane purposes like streaming YouTube Clips." *Id.* at 4 ¶ 8. To correct the internet issues, Plaintiff had "numerous interactions with Xfinity representatives," including "contacting Mr[.] Bill Connors (the President of Xfinity at Comcast) repeatedly since 12 August 2024 via his personal electronic mail address," "[speaking] on numerous occasions with Xfinity representatives via telephone, chat[ting] with them using their App, ha[ving] two technicians visit the apartment on three occasions and sp[eaking] with a person named Tyrone who is affiliated with Xfinity's Computer Security unit." *Id.* at 2 ¶ 4, at 4 ¶ 9. According to Comcast, Plaintiff "contacted Comcast numerous times since the Adeksons subscribed to Comcast Services in June 2024," and "[d]uring

3

those calls, Plaintiff asked that Comcast contact him directly through his email address." ECF 15-2, at 4 ¶ 11.

Plaintiff alleges that the internet speed issues are "not coincidental," but instead the result of a "calculated, callous and concerted campaign that is designed to ensure that [Plaintiff] do[es] not secure employment." ECF 9, at 4–5 ¶ 7. As such, he filed a lawsuit against Comcast in the Circuit Court for Baltimore City, alleging damages in the amount of $100,000. ECF 4, at 8. On May 23, 2025, Comcast filed a notice of removal in this Court, asserting subject matter jurisdiction on the basis of diversity under 28 U.S.C. § 1332(a). *See* ECF 1, at 1. On May 29, 2025, Plaintiff filed an amended complaint as a matter of right, *see* ECF 9, and a supplement containing exhibits, *see* ECF 13. Comcast filed the instant motion to compel arbitration on June 20, 2025, ECF 15, to which Plaintiff filed an opposition one day later, ECF 16. Shortly thereafter, on June 24, 2025, Plaintiff also filed a second amended complaint, *see* ECF 17, without consent from Comcast or requesting leave of the Court as required by Federal Rule of Civil Procedure 15(a)(2). Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave"). On July 2, 2025, Plaintiff filed an "addendum" to his response in opposition to the Motion. ECF 23. One day later, Comcast filed its reply brief, ECF 22, and the Motion is now ripe for resolution.

The nature of Plaintiff's claim (or claims) is not entirely clear as he does not identify the applicable law or legal theory supporting the allegations in the amended complaint. *See* ECF 9, at 5 ¶ 12 (identifying Md. Cts. & Jud. Proc. § 11-109 as the statute under which Plaintiff requests damages, but no statute or legal theory under which he brings his claims). Moreover, although Comcast does not directly raise this issue, "[t]he filing of the Second Amended Complaint without leave of court ordinarily is a nullity." *Jamison v. Todd Allan Printing, Inc.*, Civ. No. DKC 2008-

4

2025, 2009 WL 10727794, at *2 (D. Md. Feb. 11, 2009) (citing *Booth v. United States*, 2007 WL 2462158, at *1 (E.D. Cal. Aug. 29, 2007) ("If an amended pleading cannot be made as of right and is filed without leave of court or consent of the opposing party, the amended pleading is a nullity and without legal effect.")). Here, the Court observes that the amended complaint at ECF 9 and the proposed second amended complaint filed at ECF 17 are essentially identical and reflect only slight revisions in article usage. *Compare* ECF 9, at 1 ¶ 1 (alleging "we moved to" the address at issue), *with* ECF 17, at 1 ¶ 1 (alleging "they moved to" the address at issue); *see also* ECF 17-1 (where Plaintiff asserts that the "Amended Complaint was modified in one instance"). These insubstantial differences between the first and second amended complaint do not alter the Court's conclusion with respect to the pending Motion. As such, the Court considers the second amended complaint filed at ECF 17 as null. The operative complaint considered herein is the amended complaint filed at ECF 9.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56

"Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *see also Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered" (internal citations omitted)). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 250 (1986); *Celotex*

5

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). However, the Court may rely only on facts supported in the record. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Court may not rely upon unsubstantiated assertions in the pleadings. *Id.*

### B.     The Federal Arbitration Act

Comcast moves to compel arbitration and dismiss the amended complaint. ECF 15-1, at 7. Under Section 2 of the Federal Arbitration Act ("FAA"), an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While Section 2 has been interpreted as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the Supreme Court has been careful to clarify that "arbitration agreements are as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

The FAA permits a party to an arbitration agreement to seek to compel another party to that agreement to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, the Court "shall hear the parties,

6

and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the [C]ourt shall proceed summarily to the trial thereof." *Id.*

In the Fourth Circuit, a litigant can compel arbitration under the FAA if the litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party avoiding arbitration] to arbitrate the dispute." *See Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). The question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (brackets in original) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)). And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). But "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).

7

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

### III. ANALYSIS

Comcast moves to compel arbitration, and subsequently dismiss this action, because Plaintiff uses and benefits from the services provided under the subscriber agreement. ECF 15-1, at 17. As noted, a litigant can compel arbitration under the FAA if the litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party avoiding arbitration] to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01. Here, Plaintiff disputes only the second element[2] and contends that he is not bound by the

---

[2] The other three elements are met here. The first and fourth elements are plainly met as there is a dispute between the parties which Plaintiff is refusing to arbitrate. *See* ECF 9 (amended complaint); ECF 16 (opposition to arbitration). The third element is also met as the agreement, which is appended as an exhibit to the Motion at ECF 15-4, pertains to the provision of internet services. As Comcast contends, and Adekson does not contest, "[t]he provision of internet services over cable systems involves interstate commerce." ECF 15-1, at 7; *see also K.I. v. Tyagi*, Civ. No. JRR-23-2383, 2024 WL 4732703, at *5 (D. Md. Nov. 8, 2024) (explaining that the internet is a facility of interstate commerce (citing *United States v. Roof*, 10 F.4th 314, 385 (4th Cir. 2021)), *report and recommendation adopted*, Civ. No. JRR-23-02383, 2024 WL 5399243 (D. Md. Nov. 25, 2024).

arbitration clause because the Comcast account at issue is in his mother's name, and not his own.[3] ECF 16, at 2. He also disagrees that the arbitration provision covers his claims. *Id.*

### A.   Equitable Estoppel

Comcast asserts that although Plaintiff is a non-signatory to the subscriber agreement, he "is equitably estopped from avoiding arbitration for his claims against Comcast."[4] ECF 22, at 7. "Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed' to arbitrate." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004) (alteration in *R.J. Griffin* omitted) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000)). But "there is no requirement that arbitration agreements must be signed to be enforceable." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 854 (D. Md. 2013); *see also Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 589 (M.D.N.C. 2014) ("Arbitration agreements must be in writing, 9 U.S.C. § 2, but they need not be signed to be enforceable."). The Fourth Circuit has held that "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision." *Washington Square Secs.,*

---

[3] Plaintiff does not dispute, however, that there exists a valid written agreement containing an arbitration provision here. *See* ECF 16, at 2 ("[B]ased on Plaintiff's understanding, it is unlikely that the remit of the Defendant's Arbitration Provision is comprehensive enough to cover the aforesaid concerns."); *see also* ECF 22, at 6 (asserting that "Plaintiff does not dispute that the Subscriber Agreement exists, nor does he allege that it does not govern his relationship with Comcast").

[4] "In deciding whether a party may be compelled to arbitrate a dispute, [courts] 'apply ordinary state law principles that govern the formation of contracts,' and 'the federal substantive law of arbitrability.'" *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004) (first quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 1995; and then quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). Here, "[b]ecause the determination of whether [Plaintiff], a nonsignatory, is bound by the [Comcast subscriber agreement] presents no state law question of contract formation or validity, we look to the 'federal substantive law of arbitrability' to resolve this question." *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000).

9

*Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004); *see also Int'l Paper*, 206 F.3d at 416 (explaining a non-signatory "can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause"). Relevant here, the doctrine of "[e]quitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper*, 206 F.3d at 417–18 (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1317 (4th Cir. 1996)).

"When the signatory to an arbitration agreement seeks to compel a nonsignatory to arbitrate, the Fourth Circuit applies the 'direct benefit' test." *Thomas v. Progressive Leasing*, Civ. No. RDB-17-1249, 2017 WL 4805235, at *3 (D. Md. Oct. 25, 2017) (first citing *Int'l Paper*, 206 F.3d at 418; and then citing *R.J. Griffin*, 384 F.3d at 161). "[M]ore specifically, . . . '[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it [is seeking or] receives a direct benefit from a contract containing an arbitration clause.'" *R.J. Griffin*, 384 F.3d at 161 (alterations in *R.J. Griffin*) (citing *Int'l Paper*, 206 F.3d at 418). The direct benefit "test recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise from' the contract containing the arbitration clause." *Thomas*, 2017 WL 4805235, at *3 (quoting *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006)). "A nonsignatory's claims 'arise from' a contract containing an arbitration provision when the claims seek to enforce rights contained in that contract." *Id.*

Comcast asserts that "[c]ourts have repeatedly enforced Comcast's arbitration agreement against individuals who were not primary accountholders when they have regularly used and benefitted from Comcast's services," and cites *Shelton v. Comcast Corp.*, No. CV 20-1763, 2021

WL 214303 (E.D. Pa. Jan. 21, 2021), in support of its argument. ECF 15-1, at 19. Though not binding precedent, the Court finds the opinion in *Shelton* instructive. There, the United States District Court for the Eastern District of Pennsylvania addressed a motion to compel arbitration under similar circumstances to those presented here. In *Shelton*, the plaintiff contended that Comcast's arbitration provision was not binding on him because he was not a signatory to the subscriber agreement that provided internet and cable services to his residence. *Shelton*, 2021 WL 214303, at *1. Similar to the Fourth Circuit, the Third Circuit has held that a non-signatory can be bound by an arbitration agreement where he "'knowingly exploits' an agreement either '(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions.'" *Id.* at *4 (quoting *Griswold v. Coventry First LLC*, 762 F.3d 264, 271–72 (3d Cir. 2014)). The *Shelton* court found that the plaintiff "sought and obtained benefits under the agreement by, not only using the Comcast services provided under the agreement at the Shelton Household, but also by exercising control over the account" by listing the household "as his own home and place of employment[,] . . . associat[ing] his own personal cell phone" with the household account, and "plac[ing] a service call regarding the account" where he "acknowledged using the Comcast services and setting up *his* account online and sought customer service." *Id.* at *5 (emphasis in original). As such, the plaintiff was "equitably estopped from avoiding the arbitration provision." *Id.*

Here, the crux of the amended complaint is that Comcast did not provide adequate internet service as required by the subscriber agreement. For example, Plaintiff takes issue with "persistent interruptions of and intrusions into [his and his mother's] usage of the internet," and "intrusions . . . extend[ing] to the usage of the Internet for mundane purposes like streaming YouTube [c]lips."

11

ECF 9, at 3–4. Plaintiff also explicitly asserts that he should be provided the internet speed that he paid for under the subscriber agreement, alleging that he experienced "inexplicable [internet] speed degradation; despite paying for a service that should provide circa 300mbps." *Id.* at 3; *see also Thomas*, 2017 WL 4805235, at *4 (considering in its equitable estoppel analysis that the non-signatory plaintiff trying to avoid arbitration "voluntarily assumed the obligation of payment of the Lease" which gave rise to his claim). Plaintiff's claims "'arise from' the contract containing the arbitration clause," in that he seeks to enforce his right to certain internet speeds under the subscriber agreement. *See Thomas*, 2017 WL 4805235, at *3; *cf. Innotec LLC v. Visiontech Sales, Inc.*, No. 3:17CV00007, 2018 WL 3521181, at *6 (W.D. Va. July 20, 2018) (finding plaintiff was equitably estopped from denying it was bound by an arbitration provision when it "sued to enforce various terms of the" contract).

Moreover, like the plaintiff in *Shelton*, Plaintiff provides several times that he was involved not only with obtaining the internet service for his household, *see* ECF 9, at 1 ("[W]e . . . obtained internet service with Xfinity"); at 2 ("[W]e signed up for Internet service in June 2024"), but also engaging in numerous service calls with Comcast to complain about the internet service including, emailing the President of Xfinity at Comcast "repeatedly since 12 August 2024 via his personal email address," speaking "on numerous occasions with Xfinity representatives via telephone, chatt[ing] with them using their App, ha[ving] two technicians visit the apartment on three occasions and speak[ing] with a person named Tyrone who is affiliated with Xfinity's Computer Security unit regarding this breach of [Plaintiff's] Internet service to no avail." ECF 9, at 4; *see also* ECF 23, at 1 ("Plaintiff assumed responsibility for calling and otherwise chatting, speaking and corresponding with myriad Comcast-affiliated individuals in his mother's stead."). Also similar to the plaintiff in *Shelton*, Plaintiff associated his personal contact information with the

12

account by "ask[ing] that Comcast contact him directly through his email address" regarding the account, rather than contacting his mother, the account holder. ECF 15-2, at 4 ¶ 12. For these reasons, the Court concludes Plaintiff derived a benefit from the subscriber agreement and is estopped from avoiding arbitration.

### B. Whether the Dispute Falls Within the Scope of the Arbitration Agreement

As noted, the applicable law under which Plaintiff brings his claims is not entirely clear. Nevertheless, Plaintiff argues that the arbitration provision does not apply to his claims, which he provides are "not solely or primarily about a commercial or contractual dispute but the weaponization of the Internet to cause [Plaintiff] grievous harm both personally and professionally." ECF 16, at 3. Plaintiff's claims sound in either contract or tort, and the arbitration clause is sufficiently broad to encompass his dispute. A dispute is defined under the applicable arbitration provision as "any and all claims or controversies arising out of or related to any aspect of our relationship, including, but not limited to, any and all: (i) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise[.]" ECF 15-4, at 6. Plaintiff's amended complaint appears to raise a breach of contract claim,[5] *see* ECF 9, at 3 (alleging slower internet speed than was paid for); *see also* ECF 22, at 4 (alleging Comcast "shirk[ed] its contractual obligation to provide the Plaintiff and his elderly mother . . . adequate internet service"), as well as a tort claim for interference with economic relations,[6] *see id.* at 3–4 (alleging loss of economic opportunities based on an alleged "campaign

---

[5] *See, e.g., Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021) ("To state a claim for breach of contract under Maryland law, the plaintiff must establish that 'the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001))), *aff'd* 2022 WL 17985700 (4th Cir. Dec. 29, 2022).

[6] *See e.g., Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (1984) (describing the tort of "maliciously or wrongfully interfering with economic relationships in the absence of a breach of

13

that is designed to ensure that [Plaintiff] do[es] not secure employment"), which are both types of claims explicitly covered under the arbitration provision. To the extent Plaintiff brings other sorts of claims, those too are covered by the arbitration provision, given the breadth of the provision covering "any and all claims" related to Plaintiff's "relationship" with Comcast, as well as the "liberal federal policy favoring arbitration agreements," which provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273–74 (4th Cir. 1997) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25). Accordingly, all of the disputes raised in the amended complaint must be arbitrated.

### C.   Request for Dismissal

Comcast accordingly moves to dismiss the amended complaint. ECF 15-1, at 21. Plaintiff does not directly respond to Comcast's request for dismissal but asks the Court "to dismiss the Defendant's request to remove this case yet again to another locale" and "asks the Court to consider the peculiarities of his Complaint, experiences and supporting exhibits, schedule a hearing date, ensure that the undeniable imbalance of power and resources between him and the Defendant does not disadvantage him, and allow transparency and integrity to prevail." ECF 16, at 6. In *Smith v. Spizzirri*, the Supreme Court held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." 601 U.S. 472, 475–76 (2024). However, the Fourth Circuit has held that "*Smith* says nothing about what happens when the appealing party never requests a stay," and thus "'does not require' an appellate court to vacate a 'district court's dismissal order' under such circumstances."

---

contract" where "a party is liable if [it] interferes with and damages another in his business or occupation").

14

*Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025) (citing *National Cas. Co. v. Continental Ins.*, 121 F.4th 1151, 1153 (7th Cir. 2024)).

Here, Plaintiff does not specifically ask the Court to consider a stay despite Defendant's explicit request for dismissal. *See* ECF 15, at 21 ("The Court should dismiss the Amended Complaint and order Plaintiff to submit his claims to arbitration . . . ."); ECF 22, at 12 ("Comcast respectfully requests the Court grant its Motion to Compel Arbitration and enter an Order dismissing this action . . . .").[7] However, because Plaintiff brings this suit pro se, certain leniency is required. *See Haines*, 404 U.S. at 520. Given Plaintiff's pro se status, the Court liberally construes his request for this Court to "schedule a hearing date" as one opposing dismissal and in favor of a stay. ECF 16, at 6; ECF 23, at 5. Moreover, "[9 U.S.C.] § 3 provides only for a stay and does not permit dismissal unless 'there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration.'" *Miranda Sorto v. Carrols LLC*, Civ. No. DKC-23-2263, 2024 WL 2783906, at *8 (D. Md. May 30, 2024) (citing *Smith*, 601 U.S. at 476 n.2). As such, the Court will stay this action pending arbitration. *Cf. Steele v. FreedomRoads, LLC*, No. 1:23-CV-00816, 2025 WL 3004609 (M.D.N.C. Oct. 27, 2025) (staying the case pending arbitration where pro se plaintiff never addressed whether the case should be dismissed or stayed); *Reed v. LTN Glob. Commc'ns, Inc.*, Civ. No. JRR-24-03649, 2025 WL 2653196, at *11 (D. Md. Sept. 16, 2025) (exercising the Court's discretion to stay rather than dismiss the matter during the pendency of arbitration, despite the defendant's request for dismissal).

---

[7] Plaintiff ultimately had the last word on the issue by filing an "addendum" to his opposition after Comcast filed its reply. *See* ECF 23. In that filing, Plaintiff again failed to request a stay and instead stressed that he "wants to be rehumanized vis-à-vis the Defendant and ensure that he gets the justice and answers to which he and his mother are entitled as human beings" and requested "that the Court summarily dismiss the Defendant's motion to compel arbitration and preside instead over a formal trial." *Id.* at 5.

15

## IV. **CONCLUSION**

For the foregoing reasons, Comcast's motion to compel, ECF 15, is GRANTED in part and DENIED in part. This action is hereby STAYED. The parties are to submit a joint status report in 180 days advising the Court of the status of the arbitration proceedings.

A separate implementing order will issue.

Dated: February 10, 2026                                         /s/
                                                        Brendan A. Hurson
                                                        United States District Judge